## LYLE, TRUSTEE, *v.* THE STATE OF INDIANA, EX REL. SMITH.

[No. 21,176.   Filed June 22, 1909.]

1. SCHOOLS.—*Transportation of Pupils.—Townships.—Statutes.*—Under §6423 Burns 1908, Acts 1907, p. 444, §2, providing for the free transportation of pupils whose schools were discontinued, and who live farther than two miles from the school to which they are attached, and also for pupils between the ages of six and twelve who live less than two, and more than one mile from school, the township trustee is required to cause a proper conveyance punctually to be driven over a route so established and maintained as to bring the conveyance within a reasonable distance of the dwelling place of each pupil.   pp. 506, 507.

2. STATUTES.—*Remedial.—Construction.—Schools.—Transportation of Pupils.*—The act of 1907 (Acts 1907, p. 444, §§6422, 6423 Burns 1908), requiring trustees to furnish transportation to pupils in certain cases, is remedial, and should be liberally construed, to attain the ends sought, though the words of the statute, strictly construed, might require a different construction.   p. 507.

3. SCHOOLS.—*Transportation of Pupils.—Decision of Township Trustee.—Appeal.—County Superintendents.*—From a decision of the township trustee relative to the transportation of pupils an appeal lies, under §6667 Burns 1908, §4537 R. S. 1881, to the county superintendent.   p. 508.

4. SCHOOLS.—*Transportation of Pupils.—Expenses.—Duty of Trustees.*—It is the duty of a township trustee in the transportation of pupils not to subject his township to unnecessary or unreasonable expenses.   p. 508.

5. SCHOOLS.—*Transportation of Pupils.—Health.*—In transporting pupils to and from school, the township trustee should consider the health and comfort of such children.   p. 509.

6. MANDAMUS.—*Return.—Transporting Pupils.*—In an action in mandamus to compel a township trustee to furnish transportation to certain pupils whose school was abandoned, and who lived more than two miles from the school to which they were attached,

a return setting out facts showing that the trustee had procured a conveyance to pass along a central route so that it would be most accommodating and most convenient to all, is sufficient. p. 509.

From Superior Court of Marion County (74,432); *Lawson M. Harvey*, Judge.

Action by The State of Indiana, on the relation of John C. Smith, against Charles C. Lyle, as township trustee of Lawrence school township of Marion county. From a judgment for plaintiff, defendant appeals. *Reversed.*

*L. P. Harlan, William N. Harding, Alfred R. Hovey* and *Omer U. Newman*, for appellant.
*John W. Kern*, for appellee.

HADLEY, J.—The relator is seeking by mandamus to compel appellant, as trustee of Lawrence school township, to transport relator's child, who is of school age, to and from the public school. In his verified petition for the writ, which forms a part of the alternative writ, besides formal averments, among many other things, he alleges that he is the father of Esther Smith, who is over the age of six years, and resides with him in school district No. 7; that in 1907, the daily average of pupils in attendance at the school held in said district being less than fifteen, the defendant, as trustee of the school township, discontinued said school and transferred the pupils of said district to another school in said township located in Oaklandon; that the relator and his child reside three and one-half miles from the Oaklandon school; that the defendant, as such trustee, has provided for the conveyance of the children from said abandoned district to Oaklandon, and has established a fixed route of travel for the carrying vehicle in going to and returning from said school; that the relator's child is free from infectious diseases, and is entitled to be transported to and from the Oaklandon school to which she has been transferred as aforesaid, but the defendant has refused, and still refuses, to allow said

vehicle to come to a point nearer than one-half mile from the relator's house to receive and discharge his said child; that the relator has notified the defendant that his child is of school age, and has requested that defendant cause said conveyance to drive to his said residence, there to receive and discharge the child, but the defendant fails and refuses so to do.

Appellant's demurrer to the alternative writ for insufficiency of facts was overruled. Whereupon he filed a return to the writ which, among other things, admits his official character, the abandonment of the school in district No. 7, the transfer of the pupils, including the relator's child, to the Oaklandon school, as averred in the petition, and then alleges, in substance, that school district No. 7 is one and one-half miles wide, east and west, and two and one-half miles in length, north and south, and the Oaklandon school is situate northeast and adjoining said district; that a highway, partly graveled, runs north and south through said district, about the center thereof, and no school patron lives at a greater distance than three-fourths of a mile from such highway, and with the exception of three families such patrons reside from three hundred yards to five-eighths of a mile therefrom; that before the commencement of the current school year the defendant designated and established a route to be traveled by the township wagon, commencing at the south line of said school district No. 7, and going thence northwesterly over said central highway to the north boundary line of the district, thus passing within a convenient distance of all the pupils of the district, no one being obliged to travel more than five-eighths of a mile to reach the road over which the township wagon passed; that other east and west highways cross said central road and furnish the children living on either side of said central road easy and convenient ways by which to reach the wagon on said central road; that in establishing said route the defendant designated points

nearest and most convenient to the several homes of the children entitled to transportation, as places where the township wagon should stop and take them on in the morning and put them off in the evening; that by such means all the children of said district are gathered between the hours of 6:45 o'clock a. m. and 8 o'clock a. m. of every school day, and transported safely, comfortably and timely to said Oaklandon school in one wagon; that all of said children are dismissed from school at 3:55 o'clock p. m., and for three months in mid-winter at 3:35 o'clock p. m., and are transported from school and discharged from the wagon at said stopping points in time for them all to reach home before 5 o'clock p. m. and before dark; that one wagon could not drive to the homes of all the children in the district in less than three hours' time, and could not reach Oaklandon in time for the opening of school, without starting at an unreasonably early hour; that many of the children, in going to and returning from school, would be required to spend from five to six hours every school day in said wagon; that, to enable the wagon to be driven to the home of each child entitled to transportation, to receive and discharge such child, it would be necessary for said trustee to provide another wagon, at a great outlay of money, which he alleges would amount to an unreasonable and unwarranted expenditure of the public funds. He further shows that he has provided a safe and comfortable conveyance for all school children in district No. 7 entitled to transportation, and that he is now engaged in transporting all of them to the Oaklandon school in safety and comfort, and without imposing upon any child hardship or inconvenience.

The relator's motion to quash the return for insufficient facts was sustained, and, appellant refusing to plead further, a judgment for a peremptory writ of mandate was entered against him.

The only question presented may be stated thus: Is it the

duty of township trustees, under the provisions of the act of
1907 (Acts 1907, p. 444, §§6422, 6423 Burns 1908),

1. to cause school children to be taken from, and re-
turned to, their several homes in comfortable convey-
ances provided for that purpose? Or is that duty fulfilled
by causing a proper conveyance punctually to be driven over
a route so established and maintained as to bring the convey-
ance within a reasonable distance of the dwelling place of
each pupil? The first section of the act provides that the
trustee shall discontinue and abandon all schools at which
the average daily attendance during the last preceding school
year has been twelve or less, and when the average daily at-
tendance for the same period has been fifteen or less he may
discontinue and abandon the same.

Section 6423, *supra,* reads as follows: "It shall be the
duty of the township trustees to provide for the education
of such pupils as are affected by such or any former discon-
tinuance in other schools, and they shall provide and main-
tain means of transportation for all such pupils as live at a
greater distance than two miles, and for all pupils between
the ages of six and twelve that live less than two miles and
more than one mile from the schools to which they may be
transferred as a result of such discontinuance. Such trans-
portation shall be in comfortable and safe conveyances. The
drivers of such conveyances shall furnish the teams therefor,
and shall use every care for the safety of the children under
their charge, and shall maintain discipline in such convey-
ances. Restrictions as to the use of public highways shall not
apply to such conveyances. The expenses necessitated by
the carrying into effect the provisions of this act shall be
paid from the special school fund."

We cannot believe that the General Assembly intended
that school children, of districts abandoned under the pro-
visions of the statute, should be relieved of effort and inci-
dent exposure in going to and returning from school; or, in
other words, that it was intended to furnish children in such

abandoned districts with facilities and comforts superior to those enjoyed by school children generally throughout the State. It is clear that it was intended that such children should not have less than they, as a body, possessed before their own school was discontinued.

We must bear in mind that we are dealing with facts as they exist in Marion county, within a few miles of the State capital, where the school district is small and the school revenues abundant. But the law that controls these facts must likewise be applied to and control the facts in communities of the State where the population is sparse, districts large, and revenues more limited.

The eloquence of counsel for appellee, with respect to the fact that this is an age of progress in the development of educational facilities and in the conservation of health, is appreciated, but we are unable to acknowledge that there is reason or authority for bestowing special benefits and favors on a particular class of children.

The statute is clearly remedial and administrative in character, and should receive a liberal and reasonable construction. *State, ex rel.,* v. *Schmetzer* (1901), 156 Ind. 528. We are not, therefore, required to import to the language of the law the strict signification ordinarily warranted by the words employed, if, from the context, the subject, the history, and the object to be attained, clearly show that the General Assembly intended that it should receive a modified interpretation.

Turning then to the construction of the statute, it will be noted first, that the children who are over the age of twelve years and reside within a distance of two miles from said school, and children under twelve years who reside within one mile of the school to which they have been transferred, are not entitled to transportation by the trustees, but must make their own way to and from school. This exception is significant. It shows two things: (1) That the lawmakers did not intend to bestow special priv-

ileges and immunities upon the patrons and children of abandoned districts; (2) that, in the legislative judgment, two miles in the one case and one mile in the other are not unreasonable distances for children to walk in attending the public schools. Furthermore, if it was the purpose to relieve the children of the district from the fatigue of walking, both before and after spending the day in the school, the reason that the right was not extended to all the children of the district is obscure. It is beyond belief, from these and many other considerations that present themselves, that the spirit of the statute requires the trustee to cause a conveyance to be driven to the home in the morning, and again in the evening, and to take up and leave every child, residing beyond the limited distances, at his own doorstep, when many of the children might reduce the time en route two-fold by the generally pleasurable and health-giving exercise of a reasonable walk.

Being a matter of administration, the whole subject must necessarily rest largely upon the sound discretion of the trustee. The determination of questions arising in the establishing of such a route relate to school matters, and if a patron is dissatisfied with any decision of the trustee with respect to the walking distance, or any other decision relating to the transportation of children, an appeal may doubtless be had to the county superintendent under the provisions of §6667 Burns 1908, §4537 R. S. 1881. *State, ex rel.,* v. *Black* (1906), 166 Ind. 138; *State, ex rel.,* v. *Schmetzer, supra.*

As a public officer, it is the duty of the trustee to furnish the children of his township, of school age, with reasonable facilities for attendance upon the public schools. It is just as plainly his duty to subject his township to no unnecessary or unreasonable expense. If he can, by requiring the pupils to walk a reasonable distance to meet the conveyance, comfortably, safely and timely transport all

the children of the district in one conveyance, he should not subject his township to the expense of two wagons in performing the same service.

It can hardly be doubted that the mirthful play of well-clad children, in the open, in journeying over fences and fields, and along highways for short distances, is more hygienic and sanitary, and in the end better for the children, than to transport them assembled in closed vehicles—sometimes too warm, sometimes too cold—for hours at a time in doubling the travel to the several homes. The health and protection of the children should in all cases be fundamentally considered. Their ages and sex, whether they must travel alone or in company, the character of the way, the facilities for rest and shelter while waiting for the conveyances in inclement weather, are all proper matters to be weighed in determining what is reasonable. It seems to us that it should not be difficult to make just and reasonable arrangements in all cases, where there is a proper coöperation by the parents and trustee.

Appellant alleges, in substance, in his return to the alternative writ, that the route established by him for the school wagon was so planned that no pupil is required to walk to exceed five-eighths of one mile to reach the wagon, and the relator's child walks but one-half mile; that said trustee designated points most convenient to the several homes as places for the wagon to stop, and take on and put off the children, by means of which he was enabled to gather all the children in one wagon, and deliver them at the Oaklandon schoolhouse between 6:45 and 8 o'clock a. m., or in one hour and fifteen minutes, and return all of them in the evening in substantially the same length of time, and before 5 o'clock; that to drive the wagon to each home would require three hours in the morning, and the same in the evening, thus compelling the start to be made at an unreasonably early hour in the morning and afternoon; that

to provide a driver and operate another wagon would incur a heavy outlay of money, and would be an unreasonable and unnecessary burden upon the revenues of the township.

We think this return to the alternative writ was sufficient, and that the peremptory writ should have been denied.

Judgment reversed and cause remanded, with instruction to overrule appellee's motion to quash appellant's return to the alternative writ, and for further proceeding in accordance with this opinion.