Lester ROCKWELL, Jr.,
Appellant–Plaintiff,

v.

MSD SOUTHWEST ALLEN COUNTY,
Appellee–Defendant.

No. 76A05–0005–CV–223.

Court of Appeals of Indiana.

Oct. 31, 2000.

Cynthia Rockwell, Melanie L. Farr, Haller & Colvin, P.C., Fort Wayne, Indiana, Attorneys for Appellant.

William T. Hopkins, Jr., Maci M. Doden, Barnes & Thornburg, Fort Wayne, Indiana, Attorneys for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Appellant–Plaintiff, Lester Rockwell, Jr. (Rockwell), brings this interlocutory appeal of the trial court's grant of summary judgment in favor of Defendant, MSD Southwest Allen County (MSD), on Rockwell's breach of contract claim. Following the Summary Judgment Order, Rockwell filed a Petition for Certification of Interlocutory Order and for Stay of Proceedings Pending Appeal. The trial court ordered that the Summary Judgment Order is interlocutory, certified it for appeal, and further ordered that all proceedings in the trial court be stayed pending a final disposition on Rockwell's interlocutory appeal.

We affirm.

### ISSUE

Rockwell raises one issue for our review, which we restate as follows: whether the trial court erred in granting summary judgment in favor of MSD by finding that Rockwell did not have an enforceable employment contract because the alleged contract was never ratified by a majority of MSD's governing body as required under Ind.Code § 20–5–3–8.

### FACTS AND PROCEDURAL HISTORY

MSD is a governmental entity operating as a public school corporation. On or about January 2, 1992, the business manager of MSD verbally offered Rockwell a position of employment as Director of Administrative Information Services. Rockwell accepted this offer. Although in December of 1991, the Board of Trustees of MSD authorized and budgeted for this position, Rockwell did not have a written employment contract with the Board.

However, Rockwell held his position of employment until the position of Director of Administrative Information Services was terminated effective September 30, 1998. At no time between January 2, 1992, and September 30, 1998, had a majority of the members of the school board of MSD approved any contract with Rockwell.

Nevertheless, Rockwell argues he is entitled to compensation by virtue of an oral employment contract that he had with MSD, lasting from July 1, 1998, through June 30, 1999.

On March 16, 1999, Rockwell filed a Complaint and Jury Demand in the Allen Superior Court against MSD, Superintendent Brian Smith, and Director of Human Resources Phyllis Davis. Rockwell alleged that the Defendants violated his First Amendment right to free speech, violated his constitutional right to due process, breached his oral contract of employment, and violated the Indiana Wage Claim Act. Rockwell also claimed that Smith and Davis tortiously interfered with his contractually protected employment with MSD. The Defendants removed the case to federal court and filed a counterclaim against Rockwell for an alleged overpayment. The Defendants moved for summary judgment on Rockwell's claims and the United States District Court for the Northern District of Indiana granted Defendants' Motion for Summary Judgment on all of Rockwell's claims except for

the breach of contract claim against MSD. The District Court held that there were sufficient facts in dispute that precluded summary judgment on the issue of whether Rockwell had a year-to-year oral employment contract with MSD. The District Court also denied summary judgment on the Defendants' state law counterclaim for overpayment. The District Court remanded the case to the trial court on Rockwell's breach of contract claim and on MSD's state law counterclaim for overpayment.

. On October 29, 1999, Rockwell filed a Motion for New Judge in the Allen Superior Court. On January 7, 2000, MSD filed a Motion for Summary Judgment on Rockwell's remaining breach of contract claim, raising the sole issue of whether Ind.Code § 20–5–3–8 required Rockwell's alleged oral employment contract to be approved by a majority of the members of the School Board before it became enforceable. The parties agreed to remove the case to the Steuben Circuit Court.

The Steuben Circuit Court heard oral argument on the limited issue of the applicability of Ind.Code § 20–5–3–8 and granted MSD's Motion for Summary Judgment on May 5, 2000, stating in relevant part:

\* \* \* \* \*

11. In order for Rockwell to have an enforceable contract for a specific period of time it is obligatory that a majority of the members of the governing body of MSD approve said contract in advance pursuant to Ind.Code 20–5–3–8 or ratify said contract pursuant to the provisions of Ind.Code 20–5–2–2(18).

12. Neither action occurred in the case at bar.

(R. 252).

On May 18, 2000, Rockwell filed a Petition for Certification of Appeal of Interlocutory Order for Stay of Proceedings Pending Appeal. The trial court entered an Order certifying the Interlocutory Order of May 5, 2000 to the Indiana Court of Appeals and further ordered that all proceedings in the trial court be stayed pending a final disposition of Rockwell's Interlocutory Appeal.

## DISCUSSION AND DECISION

### Standard of Review

■ When reviewing the grant of a summary judgment motion, we apply the same standard applicable in the trial court. Summary judgment is proper only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). We do not weigh the evidence, but will consider the facts in the light most favorable to the non-moving party. *Grose v. Bow Lanes, Inc.*, 661 N.E.2d 1220, 1224 (Ind.Ct.App.1996). We must reverse the grant of a summary judgment motion if the record discloses an incorrect application of the law to those facts. *Ayres v. Indian Heights Volunteer Fire Dep't, Inc.*, 493 N.E.2d 1229, 1234 (Ind.1986). The dispute before us involves the interpretation of Ind.Code § 20–5–3–8. Because the interpretation of a statute is a question of law reserved for the courts, *see, e.g., ModuForm, Inc. v. Verkler Contractor*, 681 N.E.2d 243, 248 (Ind.Ct.App. 1997), *trans. denied*, conflicting factual testimony does not necessarily give rise to an issue of fact which would preclude summary judgment.

■ On appeal from a grant of summary judgment, the burden is on the appellant to prove the trial court erred in determining there were no genuine issues of material fact and that the moving party was entitled to judgment as a matter of law. *Welch v. Scripto–Tokai Corp.*, 651 N.E.2d 810, 813 (Ind.Ct.App.1995), *reh'g denied*.

### Ind.Code § 20–5–3–8

Rockwell argues that there is a factual dispute that precludes summary judgment as to whether the MSD School Board's conduct approved his employment contract. Specifically, Rockwell contends that

Ind.Code § 20–5–3–8 does not require the governing body of a School Corporation to approve all employment contracts; rather, the statute only applies when the president or secretary of the School Corporation enters into a contract including employment contracts. Thus, Rockwell claims that because he was hired and fired solely by the School Board authorized acts of MSD's superintendents, and neither the president nor secretary of MSD entered into a contract with him, Ind.Code § 20–5–3–8 is not applicable, and there was no requirement of the School Board's approval regarding his employment contract. Rockwell further contends that there is evidence that the MSD School Board approved his employment contract by adopting and approving his employment position at the school as well as the budget and benefits included with his employment position.

Ind.Code § 20–5–3–8 states in relevant part:

> [T]he president and secretary of the governing body of any school corporation are entitled, on behalf of the school corporation, to sign any contract. These contracts may include, but are not limited to, employment contracts and contracts for goods and services. However, each contract must be approved by a majority of all of the members of the governing body....

We find the Seventh Circuit's analysis in *Morgan v. South Bend Community School Corporation*, 797 F.2d 471 (7th Cir.1986), instructive on the issue of the interpretation of Ind.Code § 20–5–3–8. Although that case involved whether a compromise settlement between an African–American principal and a school superintendent was enforceable without the school board's approval, we find the Seventh Circuit Court's analysis of Ind.Code § 20–5–3–8 persuasive. In that case, on April 23, 1981, Morgan was suspended for cause with pay from his position as principal of Oliver School in South Bend, Indiana. *Id.* at 472. Although Morgan had a contract as an administrator through the 1981–1982

school year, the school superintendent asked Morgan to accept a reassignment as a tenured classroom teacher in 1981–1982. *Id.* at 473. Morgan would keep his principal's salary and benefits for 1981–1982, but would revert to a teacher's lower pay in the fall of 1982. *Id.* Morgan later accepted the proposal, his suspension as principal was lifted, and he finished the year as principal of Oliver School and became a classroom teacher. *Id.* However, in the interim, another settlement was proposed by the hearing officer at a conference the Equal Employment Opportunity Commission held in December 1981 on Morgan's discrimination claim. *Id.* The School Superintendent, the Director of Employee Relations, and the School Board's attorney discussed the proposal among themselves, and the superintendent agreed to it. *Id.* The superintendent stated that he had the requisite votes from the school board, and later orally accepted the proposal. *Id.*

> The terms of this settlement were that Morgan would be assigned to the next available principalship (presumably at the beginning of the 1982–1983 school year), that he would retain his principal's salary until reappointed as a principal, that the school board would expunge from its files all references to the charge of discrimination, and that Morgan would not be penalized in the future because of his charge. The agreement was to be reduced to writing later. The meeting broke up, the end to the dispute apparently at hand. The defendants concede that [the superintendent] made this agreement with Morgan.

*Id.* However, the superintendent did not have the requisite school board votes, and Morgan requested for the Seventh Circuit to implement the settlement because oral settlements are binding if approved by those with apparent authority and further argued that the superintendent and the board's attorney had apparent authority to bind the board to the settlement. *Id.* at 473–474.

However, the Seventh Circuit disagreed and held that "[t]he authority to make and modify contracts of employment is confided in the board, not in the superintendent of schools or the board's lawyer." *Id.* at 479. To reach this holding, the Seventh Circuit relied on the Indiana Supreme Court case of *Board of School Com'rs of City of Indianapolis v. State ex rel. Wolfolk,* 209 Ind. 498, 199 N.E. 569 (1936). In *Wolfolk,* a teacher who had worked for six years thought she had acquired tenure, but discovered that she had not because her first years' contract "did not comply with the terms of the statute." *Morgan,* 797 F.2d at 479 (quoting *Wolfolk,* 199 N.E. at 572). Therefore, the supreme court in *Wolfolk* held that even after the teacher had worked for the full first year, her employment had not been valid by stating that:

> [A decision] can be binding only on the school officers to do what the statute authorizes, in the manner prescribed, *and all who deal with such school officers do so at their peril and take notice of the extent of their authority* ... Persons contracting with the school trustees are bound to take notice that their powers are limited by law, and, ... [i]f the statute prescribes a mode in which the power shall be exercised, and the method prescribed is disregarded or not substantially followed, and a contract entered into, such contract is void.

*Morgan,* 797 F.2d at 479 (quoting *Wolfolk,* 199 N.E. at 572) (emphasis supplied). Therefore, based on the holding in *Wolfolk,* the Seventh Circuit concluded that a wholly executory agreement between a would-be principal and the superintendent was not binding in the absence of the school board's approval. *Morgan,* 797 F.2d at 479.

Nevertheless, in that case, Morgan argued that school boards regularly contract without voting, and the superintendent had settled other discrimination complaints without presenting the settlement to the board for approval. *Id.* The school corporation did not dispute Morgan's argument, but stated that the settlements that Morgan spoke of "neither enlarged [the superintendent's] authority nor demonstrated the board's policy, because none of the other settlements involved reemployment, a subject that is of special concern to the board." *Id.* Because the applicable statutes [1] in *Morgan* spoke of employment and contracts to purchase goods, and the other settlements involved payments of money, the Seventh Circuit found the school board's argument sufficient to dispute Morgan's claim that school boards regularly contract without voting. *Id.*

However, the *Morgan* court held that the two statutes do not *expressly* state that no employment contract is effective unless it has been approved by a majority of the school board, and therefore, the statutes are ambiguous about the authority of the superintendent of schools to promise to appoint someone as a school principal. *Id.* at 479. Nevertheless, the court also held that:

> it is not unreasonable for the school board to interpret these laws as giving it power to veto the superintendent's offer to employ (or reemploy) someone as the principal of a school. The decision who shall be the principal is important in any

1. In *Morgan,* the court analyzed Morgan's claim under both Ind.Code § 20–5–3–8 and Ind.Code § 20–6.1–4–17.1. Ind.Code § 20–6.1–4–17.1 states:

    A contract of employment shall be entered into between the governing body of the school corporation and a principal or assistant principal subject to the following conditions: ... (3) Such contract may be altered or modified or rescinded in favor of a new contract at any time by mutual consent

> of the governing body of the school corporation and the principal or assistant principal, provided such contract when reduced to writing is not inconsistent with the provisions of this chapter.

However, although we find that this statute is not applicable to the case at hand because Rockwell is not either a principal or an assistant principal, the analysis in *Morgan* is instructive and of assistance to decide the case at hand.

**834**

school, and the statutes grant the school board authority to make important decisions. We need not limn the scope of the board's right to approve the superintendent's decisions to conclude that the board's reading is a permissible one. *Id.* (citations omitted). Therefore, the *Morgan* court held that the district court properly concluded that under the law of Indiana the settlement between Morgan and the superintendent was to take effect only on the approval of the board. *Id.*

In the case at hand, it is undisputed that MSD hired Rockwell to fill the position of Director of AIS. It is also undisputed that Rockwell and the superintendent had a wholly executory agreement to employ Rockwell in this position. However, Rockwell did not have a written employment contract. Further, there is no dispute that in December of 1991, the MSD School Board authorized the creation and budget for a position of Director of Administrative Information Services. However, Rockwell never discussed with any board member the existence of an employment contract, and the School Board never approved any action specifically regarding Rockwell. Therefore, we hold that the trial court properly concluded that Rockwell's alleged employment contract is unenforceable against MSD under Indiana law because the business manager did not have the statutory authority to bind MSD to an employment contract and because Rockwell's alleged employment contract was never ratified by a majority of the members of the MSD school board pursuant to Ind.Code § 20–5–3–8.

Rockwell nonetheless argues that the employment agreement he had with the business manager gave the business manager the authority upon which he relied. However, as previously discussed, any "party dealing with a municipality is bound to take notice of the limitations of its powers and the laws governing the municipality in making contracts. A municipality may deny the validity of a contract entered into by its officials if they lacked authority." *McCrary Engineering Corp. v. Town of Upland,* 472 N.E.2d 1305, 1308 (Ind.Ct.App.1985).

Therefore, because the business manager in our case lacked the requisite authority and Rockwell was required to take notice of the laws governing the school in making contracts, the trial court properly granted summary judgment in favor of MSD.

Judgment affirmed.

BARNES, J., and BAILEY, J., concur.